# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: G.J.**

**No. 13-0566 and 13-0771** (Kanawha County 12-JA-78)

**FILED**

**January 17, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Mother, by counsel Edward L. Bullman, and Petitioner Father, by counsel Tim C. Carrico, jointly appeal from the Circuit Court of Kanawha County's order entered on July 19, 2013. The guardian ad litem for the child, Jennifer R. Victor, filed a response in support of the circuit court's order. The Department of Health and Human Resources ("DHHR"), by its attorney Michael L. Jackson, has also filed a response in support of the circuit court's order. Petitioners appeal the circuit court's order denying them improvement periods and terminating their parental rights to G.J. after another of their children drowned in a bathtub.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 15, 2012, Petitioner Father returned home from work to K.J., his one year-old son, dead in the bathtub and Petitioner Mother asleep in bed. Earlier that day, just before Petitioner Father left for work, Petitioner Mother told him that she was "going to the bathroom to do my thing," which she said meant that she was going to use methamphetamine. When the police arrived, they found drug paraphernalia, including needles and spoons with drug residue in petitioners' bedroom, the room they shared with K.J. Petitioner Mother was reluctant to allow police to search her purse, but her relative emptied the contents in front of a DHHR worker; inside were more spoons with what appeared to be drug residue, razor blades, a mirror with what appeared to be drug residue, and other drug paraphernalia. In addition to K.J., another child, G.J., lives with them. A week prior to this incident, a social worker found Petitioner Mother passed out and unresponsive on her couch[1] and, on a separate occasion that week, Petitioner Mother called an ambulance because Petitioner Father was unresponsive and had blue lips.

On March 20, 2012, the DHHR filed a petition for abuse and neglect based upon K.J.'s drowning death in petitioners' bathtub. The petition alleged that Petitioner Mother's explanation of K.J.'s death did not comport with the child's capabilities that had been documented to that point, since K.J. had never before climbed out of his crib, drawn a bath, or climbed into a bathtub. The petition further alleged that Petitioner Mother disclosed that Petitioner Father

---

[1] By the time the police arrived, Petitioner Mother had awakened so no charges were filed.

provided her with the controlled substances methamphetamine and Percocet. Finally, the petition alleged that petitioners failed to provide G.J. with the necessary food, clothing, supervision, and housing; that they were not sufficiently motivated and organized to provide for the needs of the child; and that the parents' conduct constituted extreme maltreatment and negligent treatment. Petitioner Father waived his right to a preliminary hearing, and the circuit court found probable cause for removing the children from the mother's custody at her preliminary hearing. In October of 2012, following several adjudicatory hearings, the circuit court found that G.J. was an abused child, based upon petitioners' use of illicit drugs that negatively affected their parenting ability and resulted in K.J.'s death.[2] By order entered June 24, 2013, the circuit court terminated petitioners' parental rights to G.J. In that order, the circuit court found that petitioner's negligence caused K.J.'s death, that the DHHR provided remedial and reunification services to petitioners, that petitioners failed to demonstrate they were likely to comply with the terms and conditions of an improvement period, and that petitioners had not responded to services provided to them. The circuit court further found that the DHHR made reasonable efforts to preserve the family or some portion thereof, but that there was no reasonable likelihood that the conditions of child abuse and neglect can be corrected substantially in the near future and continuation in petitioners' home was not in G.J.'s best interest. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioners argue two assignments of error. First, petitioners argue that there was insufficient factual support to connect K.J.'s death with their actions. They argue that the child's death "could occur in any home with a tired mother[,] an active and curious toddler[,] and running water." A neglected child is one

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child

---

[2] In addition to G.J., petitioners have another child who is no longer under eighteen years of age and is no longer subject to the proceedings at issue here. Throughout the proceedings, petitioners were unable or unwilling to tell the DHHR where that child was located.

with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

W.Va. Code § 49-1-3(11)(A)(i). Here, the record shows that petitioners have a history of drug abuse, as well as the inability to wake themselves while under the influence. Additionally, Petitioner Father left K.J. with Petitioner Mother when he knew that she was going to use methamphetamines and Petitioner Mother slept through his death. Finally, petitioners' home was found unsuitable for human habitation due to a severe lack of cleanliness and an abundance of drug paraphernalia.

Petitioners also argue that they were wrongfully denied improvement periods because they allegedly admitted to their drug issues and wished to cooperate with recovery services. To support their claim that they acknowledge their respective drug problems, petitioners cite to an instance on the day of K.J.'s death when Petitioner Mother promised she was quitting drugs "right now" and Petitioner Father's attorney's statement at a hearing that Petitioner Father had a drug problem. Regarding recovery services, they argue that Petitioner Mother was improperly denied services and visitation with G.J., but for Petitioner Father, they argue that the fact that Petitioner Mother was denied services "adversely affected his ability to participate in services" for his drug addiction issues. Petitioners admit that Petitioner Father did not fully participate in services.

The circuit court did not err in denying petitioners an improvement period and terminating their parental rights due to their lack of participation with services and significant history of drug abuse. West Virginia Code § 49-6-12(b)(4) gives circuit courts the discretion to grant an improvement period when the respondent has shown since the initial improvement period a substantial change in circumstances. "We have held that the granting of an improvement period is within the circuit court's discretion." *In re Tonjia M.*, 212 W.Va. 443, 448, 573 S.E.2d 354, 359 (2002). Moreover, this Court has held that "'courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . .' Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, in part, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Additionally, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense. *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)

*In re Timber M.*, 231 W.Va. 44, ___, 743 S.E.2d 352, 363 (2013).

Here, a review of the record reveals no time when either petitioner personally acknowledged having a drug abuse problem or the need to remedy the situation. Additionally, the record reflects that the circuit court did not order any services for Petitioner Mother during

3

the hearings, but the DHHR did provide services to Petitioner Mother. She participated briefly in the services but stopped after a few weeks. It is clear from the record that the circuit court correctly found that, pursuant to West Virginia Code § 49-6-5(b)(1), there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected and that termination is in G.J.'s best interest. Upon such findings, circuit courts are directed to terminate parental rights. W.Va. Code § 49-6-5(a)(6).

For the foregoing reasons, we affirm the circuit court's order terminating petitioners' parental rights to G.J.

Affirmed.

**ISSUED:** January 17, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4