**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.W. and R.P.**

**No. 22-0347** (Kanawha County 21-JA-398 and 21-JA-399)

**MEMORANDUM DECISION**

Petitioner Mother H.R.[1] appeals the Circuit Court of Kanawha County's April 8, 2022, order terminating her parental rights to D.W. and R.P.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming, in part, and vacating, in part, the circuit court's order is appropriate, in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure

In July of 2021, the DHHR filed a petition alleging that Child Protective Services ("CPS") implemented two safety plans because of then-five-month-old R.P.'s failure to thrive. Despite these plans, petitioner could not maintain the infant's weight, yet the child thrived when placed with relatives. According to the DHHR, R.P. should have weighed approximately twenty-one pounds, but weighed only ten pounds, and a medical professional asserted that the sole cause was petitioner's inability to properly feed the child. The only specific allegation in the petition in regard to D.W. was that the child was "dirty."

In September of 2021, the circuit court held an adjudicatory hearing, during which petitioner stipulated to "failure to properly feed the infant . . . [R.P.] who had special medical needs." Petitioner's counsel then questioned her about the stipulation, and confirmed that D.W. "is the oldest child. She has not presented with any problems. There are no allegations of neglect against her." Counsel was clear that petitioner was stipulating in regard to R.P. only. On the record, the court simply concluded "I will adjudicate her as an abusing and neglectful parent." The court then heard testimony from a CPS worker, although the DHHR was clear that it was presenting evidence in support of contested adjudication against the fathers, not petitioner.

---

[1]Petitioner appears by counsel Edward L. Bullman. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Steven R. Compton. Matthew Smith appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

In its adjudicatory order, the court failed to make any specific findings of fact or conclusions of law. Instead, it simply concluded as follows: "That the Court finds that the Respondent Mother . . . is an abusing and neglecting parent as defined by the WV code and that the Infant Respondents are abused and neglected children as defined by the WV code." The court failed to make any findings as to how, exactly, petitioner *abused* either child when the evidence spoke only to *neglect* by her failure to provide R.P. with proper food or medical care. The court also failed to make any specific findings as to how D.W. was either abused or neglected, given that petitioner's stipulation spoke only to her conduct regarding R.P.

In November of 2021, the court granted petitioner a post-adjudicatory improvement period upon testimony that petitioner was fully compliant with all of her services. The court required petitioner to continue participating in nutrition classes, adult life skills, parenting education, random drug screens, and supervised visits. Petitioner was also required to "participate in all medical appointments for . . . [R.P.] and attend [B]irth to [T]hree," a support system for children under three years old who have developmental delays. Thereafter, the court held review hearings on the improvement period and found that petitioner was in compliance therewith.

In April of 2022, the court held a dispositional hearing, during which the DHHR presented testimony from a CPS worker who indicated that petitioner had intermittent compliance with parenting and adult life skills, having missed five classes and received a noncompliance letter. The worker also indicated that petitioner "has a lot of missed homework assignments . . . [a]nd has yet to gather necessary baby supplies for [R.P.]." According to the witness, "the Department recommends termination of parental rights of . . . [petitioner] due to minimal progress from services, and the Department recommends [R.P.] to remain in the legal custody of the DHHR and her current placement." The worker did not provide any evidence or a recommendation in regard to D.W., other than to suggest that the child "be dismissed to full physical and legal custody of her father." In fact, counsel for the DHHR limited inquiry to R.P., explicitly noting in questioning this witness that petitioner was "accused and ultimately adjudicated for the child [R.P.] being neglected due to failure to gain weight." The witness also explained that R.P. was a "medically-complex child with special needs" that she did not believe petitioner could meet. Upon cross-examination from petitioner's counsel, the witness agreed that, to her knowledge, there was no evidence that petitioner abused or neglected D.W. She further agreed that the issue in the case concerned petitioner's ability to care for R.P.'s special medical needs. Another DHHR provider testified to petitioner's compliance and reiterated the opinion that petitioner's parental rights should be terminated. According to the witnesses, petitioner's home was inappropriate and lacked adequate heating, although housing was not an issue for which petitioner was adjudicated. Petitioner also testified regarding employment, housing, and her participation in R.P.'s medical appointments. Finally, D.W.'s father testified to the child's medical issues that he corrected through treatment, such as issues with her eyes.

On the record, the court found that "termination of [petitioner's] rights is appropriate in this matter to both children" because "[s]he's not made any significant progress." According to the court, petitioner had actually regressed, as evidenced by her housing situation and her "not really being attentive to the needs of the child or having shown any progress towards improvement." In the order on appeal, the court failed to make any specific findings of fact or conclusions of law and, instead, simply declared that there was no reasonable likelihood that petitioner could

2

substantially correct the conditions of abuse and neglect in the near future because she had not made meaningful efforts to rectify the circumstances that led to the petition. The court also concluded that the children's best interests required termination of petitioner's parental rights and that this constituted the least restrictive alternative available.[3] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). In the current matter, petitioner argues that the circuit court erred in terminating her rights to D.W. when she was adjudicated only of neglecting R.P.'s medical and nutritional needs. Given that the record does not support the circuit court's adjudication of D.W. as either an abused or neglected child or the adjudication of R.P. as an abused child, we agree with petitioner that termination of her parental rights to D.W. was in error.

As set forth above, petitioner's stipulation applied only to R.P. and her neglect of that child by failing to properly feed the child and address the child's medical needs. Further, the DHHR elected to produce no evidence in support of petitioner's adjudication of D.W.[4] In fact, multiple parties at several hearings limited the discussion of petitioner's neglect to R.P. only. Despite these limitations, the court nonetheless concluded in its adjudicatory order that petitioner subjected *both* children to neglect and *abuse*. There is simply nothing in the record to support this determination, which is compounded by the fact that the court failed to make any specific findings upon which to base its conclusion.

In discussing the sufficiency of orders in abuse and neglect proceedings, we previously explained that

> [p]rocedurally, these various directives [set forth in the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes] also provide the necessary framework for appellate review of a circuit court's action. Where a lower court has not shown compliance with these requirements in a final order, and such cannot be readily gleaned by this Court from the record, the laudable and indispensable goal of proper appellate review is thwarted.

---

[3]The court also terminated the parental rights of R.P.'s father, and the permanency plan for that child is adoption in the current placement. The permanency plan for D.W. is to remain in the custody of the nonabusing father.

[4]At disposition, the guardian elicited testimony from D.W.'s father concerning efforts he had taken to rectify that child's medical issues that he claimed petitioner had ignored. However, evidence introduced at the dispositional hearing cannot be used to support the circuit court's earlier adjudicatory conclusions, especially considering that these allegations were not contained in the original petition. Instead, the DHHR should have been required to amend the petition to include allegations that petitioner neglected D.W., and the final adjudicatory hearing should have been re-opened, as permitted under Rule 19(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings.

*In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001). We further explained that "[a]dequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court." *Id*. (citation omitted). *Edward B.* concerned a dispositional order that failed to include specific findings required for termination of parental rights. *Id*. at 629-30, 558 S.E.2d at 628-29. Although our focus here is on the court's adjudicatory order, this direction is nonetheless instructive because the circuit court made insufficient findings as to how, exactly, petitioner abused either child or neglected D.W.

West Virginia Code § 49-1-201 defines "[n]eglected child," in relevant part, as a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care, or education." Looking to the circuit court's ruling concerning petitioner's neglect, there are no specific findings as to how petitioner harmed or threatened D.W.'s physical or mental health by failing to supply *that child* with any of the necessities listed in the applicable statute. Further, West Virginia Code § 49-1-201 defines "abused child," in relevant part, as "[a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." There is simply no evidence in the record to support a finding that either child was abused. This is critical, because, before this Court, both the DHHR and the guardian seize upon the language defining "abused child" as "another child in the home" with an abused child to argue that termination of petitioner's parental rights to D.W. was appropriate, given the court's finding that R.P. was abused. In making this argument, respondents admit that "there are no allegations that [p]etitioner directly abused or neglected the child D.W." Because we conclude that the finding of abuse to R.P. was in error, we find that any adjudication of D.W. upon these grounds as "another child in the home" similarly fails. Further, because the circuit court failed to properly adjudicate D.W., the termination of petitioner's parental rights to this child was also in error. *See* Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983) (holding that before a court may impose any disposition under West Virginia Code § 49-4-604, it must "determine 'whether such child is abused or neglected'").

Turning to petitioner's remaining arguments in regard to R.P., we find no error. First, petitioner argues that she should have been entitled to an extension of her post-adjudicatory improvement period. In support of this argument, petitioner asserts that she was fully compliant with the terms of her improvement period, but this argument ignores the evidence below. While it may be true that petitioner participated in some services and medical appointments for R.P., the court also heard evidence that she missed so many scheduled services that she was issued a noncompliance letter. Further, the DHHR produced testimony that petitioner still, after months of services, had not gathered the supplies necessary to care for R.P. According to West Virginia Code § 49-4-610(6), a circuit court may extend an improvement period when, among other things, it finds that the parent "has substantially complied with the terms of the improvement period." Here, the record demonstrates that petitioner was not substantially compliant. Accordingly, we find no abuse of discretion in the court's refusal to extend petitioner's post-adjudicatory improvement period. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court's ruling on an improvement period is reviewed for an abuse of discretion).

4

Finally, petitioner argues that the court erred in terminating her parental rights to R.P. because the child was placed with a relative and could have remained there in a legal guardianship. However, petitioner fails to challenge the circuit court's findings upon which termination was based; namely, that there was no reasonable likelihood that the conditions of neglect could be substantially corrected and that the child's welfare required termination. Because the court had ample evidence upon which to base these findings in regard to R.P., we find no error in the termination of petitioner's parental rights. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood. . . that conditions of neglect . . . can be substantially corrected").

For the foregoing reasons, we affirm, in part, and vacate, in part, the circuit court's April 8, 2022, order terminating petitioner's parental rights and remand the matter for the holding of a new adjudicatory hearing, during which the DHHR will be required to present clear and convincing evidence in support of its position that petitioner abused and/or neglected D.W., and for further proceedings consistent with the applicable statutes and rules. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed, in part, vacated, in part, and remanded with directions.

**ISSUED**: February 7, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING:**

Justice John A. Hutchison

Hutchison, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision. Accordingly, I respectfully dissent.