# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **A.M. and M.M.**

**No. 23-242** (Wood County CC-54-2022-JA-286 and CC-54-2022-JA-287)

## MEMORANDUM DECISION

Petitioner Mother C.M.[1] appeals the Circuit Court of Wood County's March 30, 2023, order terminating her parental rights to the children, A.M. and M.M.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2022, the DHHR filed a petition alleging that petitioner abused and neglected the children by providing unsuitable housing, failing to meet A.M.'s educational needs, abusing substances, and permitting the children to have contact with an inappropriate caregiver. The DHHR's petition outlined petitioner's Child Protective Services ("CPS") history leading to the filing of the petition. In August 2022, CPS investigated a referral regarding petitioner's drug use. At that time, the CPS worker did not have significant safety concerns but observed M.M.'s tooth decay and matted hair. Further, A.M. reported sleeping at petitioner's boyfriend's house. The boyfriend's parental rights were terminated to his own children because he sexually abused them. In October 2022, CPS workers performed a welfare check after receiving another referral. Upon arrival at petitioner's apartment, it appeared no one was home but the door was unlocked by petitioner's landlord. CPS workers could smell an odor coming from outside the home and, once inside, they observed copious amounts of trash and clutter. Additionally, bugs were flying, dirty diapers were on the floor, and a rabbit was in a cage with no food or water. Petitioner's landlord advised CPS workers that he was planning to evict petitioner due to the condition of the home and her use of controlled substances but that she had been avoiding him. In an attempt to locate petitioner, CPS workers went to her boyfriend's home. When they arrived, there was a strong smell of marijuana coming from the home. The boyfriend would not permit CPS workers to go inside and insisted that the children were across the street at the neighbor's house. While knocking on

---

[1]Petitioner appears by counsel James Griesacker. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Counsel Keith White appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

the neighbor's door, CPS workers observed petitioner and the children sneaking out the back door of the boyfriend's home. Petitioner was stopped by law enforcement shortly thereafter and appeared to be under the influence.

The circuit court held an adjudicatory hearing in November 2022, during which petitioner denied any substance abuse since 2017 and minimized the conditions in the home and her extensive exposure of the children to her boyfriend. The court took additional evidence at a second adjudicatory hearing in February 2023, during which Petitioner testified again, refuting the DHHR's allegations. Petitioner denied being in a relationship with her boyfriend and stated that she posted on Facebook that the two were engaged to avoid having men "hit [her] up." She also denied taking her boyfriend with her to drug screens, asserting that she only gave him a ride once so he could go to a job interview. At the conclusion of the testimony, the court found clear and convincing evidence that the children were abused and neglected and adjudicated petitioner as an abusing and neglecting parent. Petitioner, thereafter, filed a motion for an improvement period.

Prior to disposition, the DHHR filed reports for the court's consideration. The DHHR submitted petitioner's Facebook status update of December 16, 2022, indicating that petitioner and her boyfriend were engaged, as well as an email from the Day Report Center stating that petitioner brought her boyfriend with her to drug screens. Additionally, the DHHR submitted an email from the children's relative placement requesting that visits with petitioner cease. The request was based on petitioner's failure to appear for confirmed visits and the psychological abuse it caused the children. Importantly, the email detailed a recent visit scheduled for Valentine's Day, which was also the week of A.M.'s birthday. The children bought chocolate for petitioner, but petitioner did not appear and later claimed that her car broke down and her phone died. The relative placement represented that this was not the first time petitioner failed to appear for visits. Finally, drug screens were also submitted, which included a positive result for methamphetamines in January 2023, as well as several positive results for alcohol between November 2022 and February 2023.

The court held a dispositional hearing in March 2023, at which time the DHHR and guardian supported termination of petitioner's parental rights. The court took judicial notice of all previous testimony, and no further testimony was presented. The DHHR's exhibits filed before disposition were admitted into evidence with no objection by petitioner. Considering the evidence, the court found that petitioner failed to demonstrate that she would be likely to comply with terms of an improvement period and that there was no likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Further finding it necessary for the welfare and best interests of the children, the court terminated petitioner's parental rights. It is from the dispositional order that petitioner appeals.[3]

---

[3]The father of A.M. is deceased. The father of M.M. is unknown; however, a putative father is set to undergo paternity testing. The permanency plan is adoption of both children by kinship placement. In the event the putative father is determined to be M.M.'s biological father, the permanency plan for M.M. is a gradual transition into the custody of her father with continued sibling contact.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Before this Court, petitioner asserts several assignments of error.[4] First, petitioner argues that the circuit court erred by denying her motion for an improvement period. However, it is within the court's discretion to refuse to grant an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Additionally, we have held that,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As the court found, petitioner's testimony demonstrates her failure to acknowledge the existence of a problem because she continued to contest the allegations made in the petition and make excuses for her behavior. Therefore, we find that the circuit court did not abuse its discretion in finding that petitioner failed to demonstrate that she would be likely to comply with the terms of an improvement period or in denying her motion for the same.

Petitioner further argues that the circuit court erred by terminating her parental rights when there was a less restrictive dispositional alternative. We have held that,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, there was sufficient evidence for the court to conclude that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected. The court found that petitioner continued to test positive for drugs and alcohol, failed to appear for visits with the children, was noncompliant with treatment services, and demonstrated an unwillingness to end her relationship with her boyfriend who lost his parental rights to his own children due to sexual abuse. The court correctly considered

---

[4]One of petitioner's assignments of error concerns the circuit court's alleged failure to include the children's maternal grandmother as a party with the right to appointed counsel. However, we find that petitioner lacks standing to defend the rights of a third party on appeal, and we, therefore, decline to address this argument. *See Kanawha Cnty. Pub. Library Bd. v. Bd. of Educ of Kanawha Cnty.*, 231 W. Va. 386, 398, 745 S.E.2d 424, 436 (2013) ("[C]ourts have been reluctant to allow persons to claim standing to vindicate the rights of a third party[.]").

the weight of the evidence in making the determination that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected and that termination was in the best interests of the children. Because the court had sufficient evidence upon which to make these findings, we find no error in the termination of petitioner's parental rights.[5]

For the foregoing reasons, we find no error in the decision of the circuit court and its March 30, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: October 25, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[5]As an additional assignment of error, petitioner argues that the court conducted an improper dispositional hearing and denied her right to be heard. However, we decline to address these arguments on appeal because petitioner waived them below. Specifically, while petitioner argues that the court erred in admitting the DHHR's reports into evidence during the dispositional hearing, including on hearsay grounds, the record reveals that petitioner explicitly stated that she had no objection to the admission of these documents. *See In re Tiffany Marie S.*, 196 W. Va. 223, 234, 470 S.E.2d 177, 188 (1996) (finding that a failure to object to the wrongful offer of evidence in the circuit court typically constitutes a waiver of objection under Rule 103(a)(1) of the West Virginia Rules of Evidence). Further, while petitioner asserts that she was denied her right to cross-examine the individuals who drafted the emails contained in the DHHR's reports, the record indicates that when asked if petitioner had anything to present at disposition, she indicated that she did not. Finally, petitioner argues that the court erred by not allowing her to testify. However, the transcript from the dispositional hearing reveals that petitioner initially elected not to testify, later agreed to proceed by proffer on the issue of an improvement period, and requested to address the court only after it issued the final ruling. Accordingly, petitioner's failure to assert her right to call witnesses or testify on her own behalf before the close of evidence is fatal to her arguments on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." (citation omitted)).