573 S.E.2d 354

In re: **TONJIA M.**

No. 30404.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2002.

Decided Nov. 1, 2002.

Steven Bagby, Esq., Weston, for Appellant Dorlen M.

Kourtney A. Ryan, Esq., Buckhannon, Guardian Ad Litem for Appellee.

Darrell V. McGraw, Attorney General, C. Carter Williams, Assistant Attorney General, Charleston, for Appellee West Virginia Department of Health & Human Resources.

PER CURIAM.

This appeal arises from an August 29, 2001 order of the Circuit Court of Lewis County, West Virginia terminating the parental rights of the appellant, Dorlen M., as to his daughter, Tonjia M.[1] The appellant asserts that the circuit court erred in four ways: first, by finding that Tonjia was an abused and neglected child; second, by denying the appellant's motion for an improvement period; third, by denying the appellant's request for supervised visitations with his daughter during the pendency of the case; and finally, by admitting into evidence photographs from a roll of undeveloped film found in the appellant's home.

I.

On May 5, 2000, a West Virginia Department of Health and Human Resources ("DHHR") Child Protective Services Worker, Jennifer Jonas Linger, filed a petition in

---

1. Because of the sensitive nature of this case, initials will be used to protect the names of the parties involved.

Lewis County Circuit Court alleging that five-year-old Tonjia M. was an "abused and neglected child" as defined by *W.Va.Code*, 49–1–3 [1999].[2]

Specifically, the petition alleged that Tonjia's father, Dorlen M., had exposed Tonjia to sexually explicit adult movies, that he had struck her with his hand and with a switch, that he had touched and kissed her buttocks and genitalia, that Tonjia was afraid to return home to her father, and that Tonjia had gone to school dirty. The petition alleged other similar instances of neglect, unfitness, and improper parental care by Dorlen M. and by Tonya D., Tonjia's mother.

The circuit court determined that there was reasonable cause to believe that Tonjia' physical well-being was in imminent danger, placed Tonjia in the temporary custody of the DHHR pending further proceedings, and set the matter for preliminary hearing. The circuit court then appointed for Tonjia a guardian *ad litem*. Because Dorlen M. and Tonya D. were indigent, they were each appointed counsel.[3]

On May 11, 2000, Dorlen M. requested, and the circuit court granted, supervised visitation with Tonjia. The father had his first supervised visit with his daughter in late May 2000. Ms. Linger from the DHHR supervised the visit. On June 5, 2000, a hearing was held and Ms. Linger testified about Dorlen M.'s behavior during the supervised visit. Ms. Linger testified that Dorlen M. had acted inappropriately by repeatedly kissing his daughter "passionately" on the lips for a lengthy periods of time and that when the petitioner attempted to hold Tonjia, she would try to squirm away. Ms. Linger also testified that Tonjia's grandmother, who was also present during the visit, told Tonjia to "to stop telling stories, to stop lying" and that "she was getting him [her father] in trouble." According to Tonjia's foster parent, Tonjia was greatly upset by the visit with her father and grandmother. Ms. Linger further testified that Tonjia's psychologist had recommended cancelling visitation between Tonjia and her father and grandmother because of the effect it had on Tonjia. At the end of the hearing, the circuit court terminated Dorlen M.'s supervised visitation with Tonjia.[4]

On June 30, 2000, the circuit court reconvened the adjudicatory hearing, but then continued it because of the appellant's absence. However, at the hearing, Dorlen M.'s counsel sought permission to withdraw from representing Dorlen M. because of a conflict of interest.[5] The circuit court judge granted the request to withdraw, appointed Dorlen M. new counsel, and rescheduled the adjudicatory hearing.

The adjudicatory hearing was held over the course of three subsequent dates: December 4, 2000, May 7, 2001, and June 27, 2001. On December 4, 2000, Lewis County Deputy John J. Burkhart testified and described the condition of Dorlen M.'s home at the time that Tonjia was removed from the home. Deputy Burkhart testified that the home was dirty and cluttered, and that, pursuant to a search warrant, he removed numerous adult magazines and magazine pages from Dorlen M.'s bedroom, plus four pornographic videotapes stacked next to the television in the living room. The pornographic tapes were found mixed with Tonjia's cartoon and video cassettes. Deputy Burkhart also testified that he seized an undeveloped roll of film from Dorlen M.'s residence. The Lewis

---

2. *W.Va.Code*, 49–1–3(a) [1999] defines an "abused child" as:

a child whose health or welfare is harmed or threatened by:

(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home; or

(2) Sexual abuse or sexual exploitation[.]

3. Tonjia's mother, Tonya D., voluntarily relinquished her parental rights prior to the final adjudication during a hearing held on October 11, 2000.

4. Despite Dorlen M.'s continued requests to reinstate supervised visits with his daughter, Dorlen M. was not permitted to visit his daughter again. Dorlen M.'s last contact with his daughter was in May of 2000 when she was five years old.

5. Dorlen M.'s counsel, a mental hygiene commissioner, withdrew after an application for the commitment of Dorlen M. to a mental health institution was filed.

County Sheriff's Department later developed the film and found it contained sexually explicit photographs of Tonjia's mother.

Dorlen M.'s counsel objected to admission of the developed pictures into evidence, arguing that the Sheriff's Department did not include the film on its inventory of the search warrant, and that Tonjia could not be exposed to the contents of an undeveloped roll of film. Although the judge initially declined to admit the pictures into evidence, ultimately the pictures were admitted over Dorlen M.'s counsel's objections.

Also at the December 2000 adjudicatory hearing, two mental health experts testified about whether Tonjia had been sexually abused or otherwise neglected. Margaret Tordella, a licensed clinical social worker and counselor, testified that she believed that Tonjia had been sexually abused and recommended no further contact between Tonjia and her father. Based on her ten interviews with Tonjia, Ms. Tordella testified that Dorlen M. had licked Tonjia's genitalia and buttocks, that Dorlen M. had sexual intercourse with his daughter five times, and had touched her between her legs. However, Ms. Tordella admitted that there were problems in consistency with the stories that Tonjia told, and that she had obtained information from Tonjia that some sexually inappropriate activity had occurred between Tonjia and another young boy in a foster home in which Tonjia was residing.

Next, Terry Laurita, a licensed psychologist, testified for Dorlen M. as a rebuttal to the testimony of Ms. Tordella. Ms. Laurita testified that there were numerous problems with Ms. Tordella's methodology, and that the evidence suggested that Tonjia could not tell the difference between the truth and fantasy. Notably, Ms. Laurita did not interview Tonjia. Additionally, Ms. Laurita could not conclude from the information presented whether or not Dorlen M. molested his daughter.

At the conclusion of testimony by the two experts, the circuit court, on its own motion, recessed the adjudicatory hearing to allow an independent evaluation by a third evaluator, child psychologist Chanin Kennedy. On May 7, 2001, Ms. Kennedy testified that she could neither affirm nor disprove whether Tonjia had been sexually abused by her father, but Ms. Kennedy concurred with the other evaluators in finding that Tonjia exhibited sexual behaviors inconsistent with children of her own age group.

At the conclusion of the adjudicatory hearing held on June 27, 2001, the circuit court found that Tonjia was the victim of sexual abuse by her father, and that she was as a matter of law an abused and neglected child. The circuit court also found that there was no substantial likelihood that the circumstances of neglect or abuse could be corrected.

The circuit court held a dispositional hearing on August 28, 2001. At the hearing, the circuit court denied Dorlen M.'s request for a post-adjudicatory improvement period and terminated his parental rights.

Dorlen M. asserts the following assignments of error: (1) that the circuit court erred in concluding that Dorlen M. sexually abused his daughter in light of the challenged expert witness testimony; (2) that the circuit court erred in denying Dorlen M.'s motion for a six-month out-of-home post-adjudicatory improvement period; (3) that the circuit court erred in denying Dorlen M.'s supervised visitation with Tonjia during the fifteen months the case was pending before the circuit court; and (4) that the circuit court erred in permitting the admission of sexually explicit photographs into evidence.

## II.

Child abuse and neglect cases involve a delicate balancing between the interests of the parents and the rights of an innocent child. However, the law's overriding consideration is the best interest of the child or children involved. This Court has held that:

Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.

Syllabus Point 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

■ In abuse and neglect cases, we review the circuit court's findings under a clearly erroneous standard.

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syllabus Point 1, *In Interest Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Because of the serious consequences of abuse and neglect proceedings, certain safeguards have been statutorily installed. Under *W.Va.Code*, 49–6–2(c) [1996],[6] circuit courts must follow specific procedures when considering allegations of neglect or abuse; circuit courts must make specific findings,

and those findings must be supported by clear and convincing evidence.

Pursuant to *W.Va.Code*, 49–6–5(a)(6) [1998],[7] a circuit court judge may permanently terminate parental rights only after finding that there is no reasonable likelihood that the conditions of abuse can be substantially corrected.[8] With this standard in mind, this Court will now address whether the circuit court erred in terminating the parental rights of the petitioner.

■ Dorlen M. argues that the circuit court's finding that he sexually abused Tonjia is not well-founded or plausible because of the numerous errors contained in social worker Margaret Tordella's evaluation and substantial evidence showing that five-year-old Tonjia is not a credible and accurate reporter.

Three different evaluators testified as to their findings about Tonjia. Margaret Tordella, who was Tonjia's counselor and had at least ten sessions with Tonjia, testified that Tonjia was sexually molested by her father. Ms. Tordella, who spent the most time with Tonjia, was quite clear that Tonjia had been abused and subjected to other inappropriate sexual conduct. Terry Laurita, who never actually interviewed Tonjia, stated that she could neither confirm nor deny that Tonjia had been the victim of sexual abuse at the hands of her father. Finally, Chanin Kenne-

---

6. *W.Va.Code*, 49–6–2(c) [1996] states:

In any proceeding pursuant to the provisions of this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. The petition shall not be taken as confessed. A transcript or recording shall be made of all proceedings unless waived by all parties to the proceeding. The rules of evidence shall apply. Where relevant, the court shall consider the efforts of the state department to remedy the alleged circumstances. At the conclusion of the hearing the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected, which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.

7. *W.Va.Code*, 49–6–5(a)(6) [1998] states in pertinent part:

upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent and commit the child ... to either the permanent guardianship of the department or a licensed child welfare agency.

8. Under *W.Va.Code*, 49–6–5(b) [1998], "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected"

... mean[s] that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help.

dy said that she could not rule out sexual abuse by Dorlen M. and that she was concerned about Tonjia's obvious exposure to sexual information. All of the experts agreed that Tonjia had a level of sexual knowledge far beyond that appropriate for five-year-olds.

We conclude, based on the testimony of the three expert witnesses, the lay testimony, and other evidence submitted but not challenged by the appellant in this appeal, that the circuit court's finding that Dorlen M. abused and neglected Tonjia was not clearly erroneous.

■ The second issue that we address is whether the circuit court erred in denying Dorlen M. supervised visits with Tonjia during the fifteen months the case was pending before the circuit court. The law generally permits and supports visitation during the pendency of neglect or abuse hearings to allow the bonds of parent and child to remain intact in the absence of compelling evidence that visitation is not in the best interest of the child. In the instant case, the evidence of Dorlen M.'s inappropriate behavior, and of the grandmother attempting to "coach" Tonjia to recant her claims of sexual abuse supported the judge's decision to cancel visitation.

■ Dorlen M. next asserts that he satisfied the statutory requirements necessary for a post-adjudicatory improvement period. The language of *W.Va.Code*, 49–6–12(c) [1996][9] provides for a post-adjudicatory improvement period. However, there are limits to the granting of a post-adjudicatory improvement period. *See* Syllabus Point 2, *State ex rel. West Virginia Dept. of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987) (holding that a parent may move for and be granted an improvement period "unless the court finds compelling circumstances to justify a denial").

The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely. In *West Virginia Department of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996), this Court addressed a similar situation stating that:

> ... in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

197 W.Va. at 498, 475 S.E.2d. at 874.

At issue is whether a compelling reason existed to deny the petitioner an improvement period. The circuit court judge, in making his ruling, stated that he was not concerned with the petitioner's ability to clean his home or to provide a proper room for Tonjia. The circuit court expressed his concern by stating that "[w]hat concerns the Court, from the initial proceedings in this case, is ... that Mr. [M.] continues to deny that he did sexually abuse or sexually molest his daughter.... I don't believe that counseling without an admission can be effective."

We have held that the granting of an improvement period is within the circuit court's discretion. Given the facts of this case, this Court cannot find that the circuit court abused its discretion in denying a post-adjudicatory improvement period.

■ Finally, given the overwhelming weight of the other evidence in support of terminating Dorlen M.'s parental rights, we will briefly address whether the circuit court erred in permitting the admission of sexually explicit photographs into evidence when the Lewis County Sheriff's Department did not document on the search warrant receipt the

---

9. *W.Va.Code*, 49–6–12(c) [1996] states, in pertinent part, that:
    (c) The court may grant an improvement period not to exceed six months as a disposition pursuant to section five of this article when:
       (1) The respondent moves in writing for the improvement period;

(2) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period[.]

roll of film from which the pictures came, and when Tonjia was unable to view the photographs on the undeveloped roll of film: Given the weight of evidence against Dorlen. M. and because there was no jury involved, any error that might have occurred in admitting the photographs into evidence was rendered harmless.

### III.

Looking at the evidence in its entirety, we conclude that the circuit court judge did not abuse his discretion in denying visitation during the pendency of the abuse hearing. The circuit court properly found Tonjia to be an abused child, and that finding of abuse was supported by clear and convincing evidence. The circuit court did not abuse his discretion in denying a post-adjudicatory improvement period. Further, the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse would be substantially corrected in the near future was not clearly erroneous. Likewise, the circuit court's subsequent termination of Dorlen M.'s parental rights was supported by clear and convincing evidence and was not clearly erroneous. Finally, we find that the circuit court acted in the best interest of Tonjia throughout the underlying proceedings.

For all of the above reasons, we affirm the factual findings of the lower court.

Affirmed.