**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.S., S.S., and J.S.**

**No. 22-645** (McDowell County 21-JA-44, 21-JA-45, and 21-JA-46)

## MEMORANDUM DECISION

Petitioner Mother J.W.[1] appeals the Circuit Court of McDowell County's June 29, 2022, order terminating her parental, custodial, and guardianship rights to A.S., S.S., and J.S.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July of 2021, the DHHR filed a petition alleging that the parents' home lacked electricity and water. Upon investigation, Child Protective Services ("CPS") observed the children to be dirty and the home in disarray, including broken windows, an extension cord running from across the street to power a television, and no refrigerator or stove. CPS implemented a safety plan with services for the parents, but petitioner tested positive for THC while subject to the plan. The petition also alleged, among other issues, that petitioner suffered from untreated mental health issues and that there was domestic violence in the home.

During a hearing in September of 2021, the court accepted petitioner's stipulation to allegations in the petition and adjudicated her of abusing and neglecting the children. The following month, the DHHR filed case plans outlining the steps petitioner needed to take to remedy the conditions of abuse and neglect. This included providing a safe and stable living environment for the children, refraining from abusing drugs, submitting to drug screens, addressing substance abuse through Family Treatment Court or outpatient counseling, participation in parenting classes, and weekly visits with the children. Over the next several months, petitioner refused to submit to a drug screen and tested positive on several occasions, including one positive screen for cocaine. Petitioner also submitted to a psychological evaluation, during which she blamed the father for preventing her from seeking therapy. Despite expressing displeasure with the father's conduct, the

---

[1]Petitioner appears by counsel Zachary K. Whitten. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Brittany Ryers-Hindbaugh. William O. Huffman appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

mother "stated that she had no reason to fear for herself at home." The psychologist concluded that petitioner had poor insight and judgment and "appeared to have little understanding of the relationship between her emotions, cognitions, and behaviors." Ultimately, petitioner's prognosis for improvement was "poor," given that "she is likely to terminate therapy prematurely when external pressures are removed because she has little insight into the cause of her problems." Accordingly, the psychologist recommended that petitioner's "exposure to her children should remain limited and supervised."

The court held a final dispositional hearing in June of 2022, during which several of petitioner's service providers testified. The court heard testimony that petitioner's drug screens had been negative "for some time," although the provider who administered the screens further testified to petitioner's disclosures of ongoing domestic violence. Specifically, petitioner showed this provider bruising on her body and stated that the father hit her. The provider advised petitioner that she needed to leave the father, but petitioner stated that the father prevented her from doing so. Over the course of the dispositional hearing, at least three providers testified to their efforts to assist petitioner in separating from the father. Multiple providers took petitioner to the Stop Abusive Family Environments ("SAFE") domestic violence shelter, which provides shelter, meals, transportation, and therapeutic referrals to domestic violence victims. However, on at least three occasions, petitioner left the shelter and resumed her relationship with the father. According to one provider, petitioner would only stay at the shelter for a few days, despite being permitted to remain there as long as she needed. One provider explained that she and other service providers talked to petitioner about domestic violence "on a regular basis." However, one provider testified that petitioner "took no ownership of [her] situation and that someone else was always to blame." A provider also testified that petitioner threatened that she could take the children from the provider at any time.

The court also heard from petitioner's parenting and life skills provider, who testified that petitioner was initially receptive to mental health treatment but changed her mind because the father did not want her to submit to the treatment. According to this witness, CPS initiated services with these parents in 2019 for issues of drug abuse and domestic violence. Despite the ongoing nature of the domestic violence between them, the provider testified that petitioner "maintained that the situation would never change." According to the provider, petitioner was aware of the separation process, but qualified that "it is up to [petitioner] to take the first step." However, the provider testified that petitioner had "significantly regressed" since the closure of the prior CPS case. This provider informed the court that she would be "livid" if the children were returned to the parents and that the children would not be safe if the parents had access to them.

Another parenting provider testified that petitioner's sessions were "not good" and that she missed many scheduled sessions. In this provider's opinion, petitioner made no progress during the proceedings, given that the provider was "unable to conduct any effective parenting sessions." This provider also testified that she did not believe that petitioner desired to leave the father and was unwilling to get help with her problems. Finally, a CPS supervisor acknowledged that petitioner obtained suitable housing and had not tested positive for any illicit substance since March of 2022. However, this witness testified that the DHHR recommended termination of petitioner's rights because of her refusal to separate from the father.

Based on the evidence, the court noted that the "housing issues appear to have been largely ameliorated," although it also found that "[i]t is readily apparent that the [a]dult [r]espondents have no intention to sever their lengthy dysfunctional relationship for any meaningful period." In fact, the court noted that the parents were holding hands during the dispositional hearing. This was in spite of the DHHR's numerous admonishments to end the relationship and their offer of resources to effectuate petitioner's separation from the father. Citing the mother's repeated rejection of the SAFE shelter and its resources, the court found that petitioner "demonstrated a clear lack of . . . fortitude for long-term meaningful change." Based on her refusal to leave the father, the court concluded that petitioner "continues to knowingly subject the children to [r]espondent [f]ather's domestic violence, as well as threats of physical, mental, and emotional injury." The court also cited petitioner's unresolved mental health issues and the resulting impairment to her ability to adequately parent the children. Based on the foregoing, the court denied petitioner an improvement period.[3] According to the court, petitioner "had ample opportunities to correct the ongoing conditions of abuse and neglect," but "squandered every chance" she was given. The court further noted that petitioner failed to testify or present any evidence in support of her request, thereby failing to satisfy the burden for obtaining an improvement period. The court also concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect and that termination of her rights was necessary for the children's welfare. Accordingly, the court terminated petitioner's parental, custodial, and guardianship rights to the children.[4] It is from the dispositional order that petitioner appeals.[5]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner raises two assignments of error challenging the circuit court's denial of her motions for improvement periods.[6] Given that the court issued only one ruling addressing both motions,[7] these arguments can be addressed together.

---

[3]Petitioner actually filed two motions for improvement periods. First, she filed a motion for a post-adjudicatory improvement period prior to the dispositional hearing, and then she filed a motion for a post-dispositional improvement period after the dispositional hearing but prior to the issuance of the dispositional order. The court made one ruling denying petitioner's motions.

[4]The court also terminated the father's parental, custodial, and guardianship rights to the children. The permanency plan for the children is adoption in their current placements.

[5]On appeal to this Court, petitioner does not challenge the termination of her parental, custodial, and guardianship rights to the children.

[6]Petitioner raises a third assignment of error challenging the circuit court's denial of post-termination visitation. However, she fails to provide any controlling authority in regard to the issue, in violation of Rule 10(c)(7) of the Rules of Appellate Procedure. Accordingly, we decline to address this issue.

[7]Petitioner asserts in her brief that the court's failure to rule on her motion for a post-adjudicatory improvement period at the adjudicatory hearing or otherwise acknowledge that the motion was being held in abeyance was an abuse of discretion that requires reversal. Because

According to petitioner, she was entitled to an improvement period because she acknowledged the conditions of abuse and neglect by stipulating to her adjudication and because she remedied her housing and substance abuse issues. However, petitioner ignores the ample evidence that she was unlikely to fully comply with an improvement period. Petitioner is correct that in order to obtain a post-adjudicatory improvement period, she was required to "demonstrate[], by clear and convincing evidence, that . . . [she was] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B) and (3)(B). While it is true that petitioner obtained suitable housing and produced negative drug screens for several months, the evidence nonetheless indicates that her compliance with services was lacking. This is especially true when it comes to services designed to remedy the issue of domestic violence in her relationship with the father. Petitioner cites her multiple visits to the SAFE shelter as evidence of her ongoing efforts to remedy this issue, but the circuit court found that her repeated return to the father evidenced a lack of intention to sever the relationship. This finding was based on testimony from several witnesses who did not believe that petitioner would end the relationship, in addition to the court's own observation of petitioner holding the father's hand during the dispositional hearing. Simply put, the evidence shows that petitioner failed to take advantage of the DHHR's efforts and services designed to remedy the ongoing domestic violence in the home. As such, it is clear that petitioner failed to satisfy the burden necessary to obtain an improvement period, and we find no abuse of discretion in denying petitioner's motions. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (permitting a circuit court discretion to deny an improvement period when no improvement is likely).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 29, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: April 25, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

petitioner fails to cite to any authority in support of this assertion, in violation of Rule 10(c)(7) of the Rules of Appellate Procedure, and because the court did, in fact, rule on her motions for improvement periods in the dispositional order, we decline to address this issue.