**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.C.-1, J.C.-2, and J.C.-3**

**No. 23-93** (Kanawha County 22-JA-143, 22-JA-144, and 22-JA-145)

## MEMORANDUM DECISION

Petitioner Mother A.J.[1] appeals the Circuit Court of Kanawha County's January 20, 2023, order terminating her parental rights to J.C.-1, J.C.-2, and J.C.-3.,[2] arguing that the court erred in considering certain evidence at adjudication and in denying her motion for an improvement period. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In March 2022, the DHS filed a petition alleging that petitioner had a history of Child Protective Services ("CPS") involvement and removal of the children from the home. The petition further alleged that two of the children had issues with truancy and, when they did appear for school, were "wearing exceptionally soiled clothing" and were very dirty. One child was noted to have "underwear soiled with feces." One child also had cuts to his feet, which the children claimed the father intentionally inflicted because the child "wasn't listening." The DHS further alleged that petitioner subjected the children to deplorable conditions in the home, including "rats going in and out of the house" that chewed one child's backpack. Additionally, the petition alleged that petitioner failed to properly feed the children, who "often [went] to bed hungry." When CPS investigated, petitioner denied the allegations but provided no further explanation. She also refused

---

[1]Petitioner appears by counsel Sandra K. Bullman. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Jason R. Trautwein. Counsel Joseph H. Spano, Jr. appears as the children's guardian ad litem ("guardian").

[2]Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the children share the same initials, we use numbers to differentiate them.

to permit CPS to inspect the home, resulting in CPS seeking emergency custody of the children instead of attempting to implement services to address the issues. Accordingly, the DHS alleged that petitioner abused and neglected the children.

At a preliminary hearing in April 2022, a CPS worker testified that she spoke to two of the children at their school and they disclosed extensive abuse and neglect in the home. Specifically, the children explained that "their home was very dirty, that sometimes they weren't able to have dinner," that the father would physically abuse them, and "that there were rats in the home that would crawl on them while they slept." The children also explained that they often had no clean clothes because no one in the home did laundry, resulting in school staff providing the children with clean clothing and helping them clean themselves in the school bathroom. The worker also described her interactions with petitioner during the investigation, during which petitioner called the children liars and demanded that the worker leave the property. Petitioner refused to permit the worker into the home, despite the worker informing her that the DHS would have to take emergency custody of the children if petitioner did not comply, to which petitioner responded, "go ahead." According to the worker, the father admitted the home was dirty and had a rat infestation. The worker also testified that this was third petition filed against the parents and that the DHS had previously provided in-home services to address the "deplorable home conditions."

At no point during the DHS's direct examination of the CPS worker did petitioner object on grounds of hearsay or any other basis. However, when the guardian cross-examined the witness as to her discussions with the children's school counselor, petitioner objected, and the following exchange occurred:

> [PETITIONER'S COUNSEL]: Your Honor, this clearly is hearsay. I understand we're here at a preliminary hearing, but lots of times the State will ask to use this testimony for adjudication. So I would object to this testimony being used for adjudicatory purposes.

> THE COURT: All right. I'll preserve that and if you'll make sure I remember that . . . .

The court then permitted the witness to continue testifying. Petitioner declined the opportunity to cross-examine this witness. Petitioner then testified on her own behalf and denied many of the allegations. At the conclusion of the hearing, the court ordered petitioner to participate in parenting and adult life skills classes and permitted her to have supervised visitation with the children contingent upon three clean drug screens. The court also ordered the children to undergo Child Advocacy Center ("CAC") interviews.

After a series of continuances, the parties appeared for an adjudicatory hearing in October 2022. Petitioner failed to appear but was represented by counsel. The DHS first presented testimony from a CPS worker who explained that petitioner failed to appear for her psychological evaluation and had not submitted to any drug screens. According to the worker, petitioner "completely ceased to participate in anything." In fact, the DHS worker indicated that petitioner had not had contact with the DHS or other service providers and the DHS was "not entirely certain where [petitioner was] at this moment." The circuit court also noted receipt of the children's CAC

interviews, in which "the children gave evidence that they had been neglected." During the hearing, the guardian moved to have the court consider the CPS worker's testimony from the preliminary hearing for purposes of adjudication. Petitioner's counsel reminded the court that she preserved an objection to the CPS worker's testimony being considered at adjudication. The court, however, overruled petitioner's objection, noting that the testimony from the preliminary hearing was subject to cross-examination. Based on the evidence, the court concluded that petitioner abused and neglected the children. The court additionally warned that petitioner should avail herself of services "sooner rather than later." Following the hearing, petitioner filed a motion for a post-adjudicatory improvement period.

In January 2023, the parties appeared for a dispositional hearing. Petitioner again failed to appear but was represented by counsel. Petitioner also failed to attend the multidisciplinary team meeting preceding the hearing. Based on the evidence, the court found that petitioner made no efforts to remedy the conditions of abuse and neglect, as she initially complied with minimal services but later failed to follow direct orders to submit to drug screens, did not attend her parental fitness psychological evaluation, and failed to visit with the children during the proceedings. As such, the court concluded that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's best interests required termination of her rights. Accordingly, the court terminated petitioner's parental rights without granting her an improvement period.[3] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first argues that the circuit court erred in considering the CPS worker's preliminary hearing testimony for purposes of adjudication, and further bases additional assignments of error concerning adjudication and disposition upon this alleged error. We find, however, that it is unnecessary to address this argument because the evidence in support of adjudication is sufficient absent the testimony of which petitioner complains. As set forth above, the circuit court received the children's CAC interviews and specifically found that the children corroborated that they were subjected to neglectful conduct. On appeal, petitioner does not challenge the court's reliance on these interviews, although she generally argues that the DHS failed to satisfy the applicable burden of proof. We find, however, that petitioner cannot establish error, given the circuit court's finding that the children's CAC interviews established their neglect. *See* Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (requiring the DHS "to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence]'" but clarifying that "[t]he statute [West Virginia Code § 49-4-601(i)] . . . does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden" (citations omitted)). Further, because petitioner predicates her arguments concerning both her adjudication and the

---

[3]The father's parental rights were also terminated. The permanency plan for J.C.-2 is adoption in the current foster home. According to respondents, concerns over the current foster home for J.C.-1 and J.C.-3 have required the DHS to attempt to locate a new foster home for these children.

termination of her parental rights entirely upon the introduction of this preliminary hearing evidence, we find that she is not entitled to relief in regard to either ruling.

Finally, petitioner argues that the circuit court erred in denying her motion for an improvement period. However, petitioner admits that, because she failed to appear at either the adjudicatory or dispositional hearings, "no evidence of compliance could be presented" in support of the motion. Indeed, West Virginia Code § 49-4-610(2)(B) requires that a parent seeking an improvement period must establish that he or she is likely to fully comply with the same. Not only does petitioner acknowledge that she failed to satisfy this burden, but the record also overwhelmingly supports denial of an improvement period. Petitioner failed to attend hearings in this matter and also failed to participate in services throughout the vast majority of the proceedings despite the circuit court's explicit warning at adjudication that her compliance was of the utmost importance. We have explained that circuit courts have discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Because petitioner almost totally absented herself from services and hearings below, we find no error in the circuit court proceeding to termination of her parental rights without affording her an improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 20, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

4