**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.G. and B.C.**

**No. 23-286** (Wetzel County CC-52-2022-JA-7 and CC-52-2022-JA-8)

**MEMORANDUM DECISION**

Petitioner Father D.C.[1] appeals the Circuit Court of Wetzel County's May 19, 2023, order terminating his parental rights to B.G. and B.C., arguing that the circuit erred by denying his motion for an extension of his improvement period and by terminating his parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming, in part, and vacating, in part, the circuit court's September 26, 2022, adjudicatory order and May 19, 2023, dispositional order and remanding for further proceedings is appropriate, in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

In March 2022, the DHS filed a petition alleging that the petitioner abused and/or neglected the children by failing to provide adequate medical care to B.C., abusing drugs, and failing to protect the children from the mother's pervasive drug use. The petition alleged that B.C. was born drug-affected and the mother tested positive for methamphetamine and amphetamine at the hospital where she gave birth. The petition noted that in 2019, B.G. was also born drug-affected; however, the petition indicated that B.G. lived with an aunt. The petition alleged that the petitioner previously used methamphetamine with the mother and that he knew or should have known of her drug use and protected the children from it. In March 2022, the court held a preliminary hearing, at which the DHS represented that there were no allegations of abuse and/or neglect regarding B.G. In April 2022, the court entered an order stating that "as to the other child, [B.G.], there were no allegations."

---

[1] The petitioner appears by counsel Michael B. Baum. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Counsel David C. White appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

Multidisciplinary team ("MDT") meetings were held in April and June 2022, but the petitioner failed to attend. A Court Appointed Special Advocate report indicated that the petitioner violated the terms of his visitation by taking B.G. out to a store and to a friend's home while the person supervising the visit was otherwise occupied. Thus, a third-party provider started supervising the petitioner's visits.

In July 2022, the circuit court held an adjudicatory hearing, at which the petitioner stipulated to a lone paragraph of the petition, which alleged that the petitioner knew of the mother's drug use while she was pregnant with B.C. and knowingly allowed her to abuse the child by taking drugs while pregnant. On this basis, the court found that the petitioner was a "neglectful parent" as to B.G. and B.C. The petitioner later moved for a post-adjudicatory improvement period, and the court entered an agreed order granting the motion. The terms of the improvement period included, among other things, that the petitioner maintain contact with Child Protective Services ("CPS"), submit to random drug screens, obtain suitable housing, maintain a valid driver's license, participate in parenting and adult life skills classes, and participate in supervised visitation with the children. In January 2023, the court held a status hearing, at which the DHS advised that the petitioner failed to participate in drug screens.

In April 2023, the circuit court held a dispositional hearing, at which the petitioner and a CPS employee testified. The CPS worker testified that that petitioner often missed or was late to visits with the children. The petitioner testified that he did not participate in drug screens, did not keep in touch with CPS on a weekly basis, and did not implement what he learned in his life skills and parenting classes into his approach to parenting. He also testified that he failed to get his driver's license, failed to find appropriate housing, and failed to participate in multiple visits with the children. The court asked the petitioner if he recognized his caseworker, who was present in the courtroom, or if he had ever spoken to her, and he stated that did not recognize her and had never spoken to her. The petitioner requested an extension of his improvement period; however, the court found that the petitioner failed to follow its orders, failed to drug screen, and continued to live in a home that was uninhabitable for the children. Thus, the court found that an extension would be inappropriate, given his failure to participate in his improvement period. The court determined that there was no reasonable likelihood that the petitioner could substantially correct the conditions of neglect in the near future and that the children's best interests required termination. Ultimately, the court terminated the petitioner's parental rights. It is from the dispositional order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). At the outset, we must address the circuit court's lack of subject matter jurisdiction to terminate the petitioner's parental rights regarding B.G.[4] We recently held,

---

[3] The mother's parental rights were also terminated. The permanency plan for the children is adoption in the current placement.

[4] While the petitioner does not raise the issue, this Court, as more fully explained herein, opines that the petitioner's adjudication regarding B.G. requires vacation due to a lack of subject matter jurisdiction. "Lack of jurisdiction may be raised for the first time in this court, when it

[t]o exercise subject matter jurisdiction [over a child in an abuse and neglect proceeding], the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to each child so named.

Syl. Pt. 3, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023). The circuit court found in its preliminary hearing order that there were no allegations regarding B.G. Furthermore, in its September 26, 2023, adjudicatory order, the court made no specific findings regarding how the petitioner abused and/or neglected B.G. Instead, the order states that the petitioner admitted that he knew of the mother's drug use while she was pregnant with B.C. and he knowingly allowed her to abuse B.C. by failing to protect the child from the mother's drug use. Moreover, the petition noted that B.G. did not live with the petitioner at the time and did not include information about how the petitioner abused or neglected B.G. specifically and in turn, the court made no adjudicatory findings regarding B.G.. *See* W. Va. Code 49-4-601(i) (requiring that findings as to whether a child is abused or neglected at adjudication "must be based upon conditions existing at the time of the filing of the petition"). Pursuant to our direction in *In re B.V.* that requires specific findings as to how each child is abused and/or neglected in order for a court to exercise subject matter jurisdiction, the circuit court's September 26, 2023, order adjudicating the petitioner as an abusing parent[5] must be vacated as it pertains to B.G. only. Further, the circuit court lack of adjudicatory findings regarding B.G. resulted in a lack of jurisdiction to make a final dispositional decision as to B.G. As such, the court's May 19, 2023, order terminating the petitioner's parental rights must be vacated as it pertains to B.G. only, and the matter must be remanded to the circuit court for further proceedings, including but not limited to an order setting out whether B.G. met the statutory definitions of an abused or neglected child, based upon the evidence previously adduced and for further proceedings consistent with the applicable statutes and rules governing abuse and neglect proceedings.

As to the termination of the petitioner's parental rights to B.C., we find no error. The petitioner argues that the circuit court erred by denying his motion for an extension of his improvement period. The circuit court may extend an improvement period for a maximum of three months when it finds that "the [petitioner] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair

---

appears on the face of the bill and proceedings, and it may be taken notice of by this court on its own motion." Syl. Pt. 4, in part, *In re Z.H.*, 245 W. Va. 456, 859 S.E.2d 399. (2021) (quoting Syl. Pt. 3, *Lewis v. Munic. of Masontown*, 241 W. Va. 166, 820 S.E.2d 612 (2018)).

[5] The court's September 26, 2023 adjudicatory order adjudicates the petitioner as a "neglectful parent." However, West Virginia Code § 49-1-201 defines the term "abusing parent" to mean a parent "whose conduct has been adjudicated by the court to constitute child abuse or neglect," thus, in keep with the statute, we refer to the petitioner as have been adjudicated as an abusing parent rather than a "neglectful parent.".

the ability of the [DHS] to permanently place the child; and that the extension is otherwise consistent with the best interest of the child." W. Va. Code § 49-4-610(6). The petitioner argues that, while he may not have participated enough to have the children returned to him, he did participate enough to merit an extension. This argument is unsupported by the record and the petitioner's own testimony. The petitioner failed to participate in his improvement period, including, critically, his failure to obtain appropriate housing. Based on his unwillingness to comply with the terms of his improvement period, an extension would have been an exercise in futility. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has discretion to refuse to grant an improvement period when no improvement is likely."). We find no error in the circuit court's denial of the petitioner's motion for an extension of his improvement period.[6]

The petitioner also argues that termination of his parental rights was error because the DHS failed to properly manage his case. To support his argument, the petitioner asserts that he had four different caseworkers during the pendency of the proceedings below, which confused him and rendered him unable to contact the DHS on a weekly basis. However, there were two caseworkers during the petitioner's improvement period and the petitioner testified that he made no attempt to contact either caseworker during his improvement period. We find the petitioner's argument meritless, as "the [petitioner] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4)(A). In further support of his argument, the petitioner claims that the DHS did not fulfill its responsibility to monitor his improvement period pursuant to West Virginia Code § 49-4-610(5)[7] and should have held a further MDT meeting. However, West Virginia Code § 49-4-610(5) does not specify how the DHS must monitor the petitioner's improvement period and West Virginia Code § 49-4-610(4)(A) places responsibility upon the petitioner to complete the terms of his improvement period. The petitioner's assertion that the DHS failed to properly manage his case is unsupported by the record, as the DHS filed case plans and periodic reports detailing the petitioner's participation, or lack thereof, in his improvement period. The record demonstrates that the petitioner failed to meaningfully participate in his improvement period. We find no error in the circuit court's termination of the petitioner's parental rights as to B.C.

---

[6] The petitioner presents an additional assignment of error in which he argues that because the court erred in denying him an extension of his improvement period, it also erred in finding that there was no reasonable likelihood that he could substantially correct the conditions of neglect in the near future. Having concluded that there was no error in the denial of the petitioner's request to extend his improvement period, the petitioner is entitled to no relief predicated on this argument.

[7] West Virginia Code § 49-4-610(5) reads as follows:

When any respondent is granted an improvement period pursuant to this article, the department shall monitor the progress of the person in the improvement period. This section may not be construed to prohibit a court from ordering a respondent to participate in services designed to reunify a family or to relieve the department of any duty to make reasonable efforts to reunify a family required by state or federal law.

For the foregoing reasons, we vacate, in part, the circuit court's September 26, 2022, adjudicatory order as it relates to the petitioner's adjudication of B.G. only; vacate, in part, the May 19, 2023, order terminating the petitioner's parental rights as it pertains to B.G. only;[8] and remand this matter to the circuit court for further proceedings, including but not limited to the entry of an order setting out the requisite findings as to whether B.G. met the statutory definitions of an abused or neglected child, based upon evidence previously adduced. *See* W. Va. Code § 49-1-201. To the extent that evidence does not support such a determination, we further direct the circuit court to undertake such proceedings, consistent with this opinion, as may be necessary to ascertain whether the child met the statutory definitions of an abused or neglected child, so that the circuit court might properly exercise jurisdiction. The circuit court is further directed to undertake any additional proceedings consistent with the applicable rules and statutes. The Clerk is directed to issue the mandate contemporaneously herewith.

Affirmed, in part; vacated, in part; and remanded, with directions.

**ISSUED**: August 7, 2024

**CONCURRED IN BY**:

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

**CONCURRING, IN PART, AND DISSENTING, IN PART**:

Chief Justice Tim Armstead

ARMSTEAD, Chief Justice, concurring, in part, and dissenting, in part:

I agree with the majority's decision affirming the termination of the petitioner's parental rights to B.C. However, I dissent to the majority's decision to vacate the circuit court's adjudication and termination of the petitioner's rights to B.G. for lack of subject matter jurisdiction. I would have set this case for oral argument to thoroughly address the issue of subject matter jurisdiction. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.

---

[8] The vacation of these orders applies only to the petitioner. The orders included certain provisions relating to the other parent. Accordingly, the portions of the orders concerning the other adult respondent remain in full force and effect.

5