## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.H.-L.**

**No. 25-110** (Marshall County CC-25-2023-JA-74)

## MEMORANDUM DECISION

Petitioner Mother N.S.[1] appeals the Circuit Court of Marshall County's October 31, 2024, order terminating her parental rights to L.H.-L., arguing that the circuit court erred in denying her a post-adjudicatory improvement period and in failing to impose a less restrictive disposition.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in November 2023, shortly after L.H.-L. was born, alleging that the petitioner was unable to provide for the child. The DHS noted that the petitioner had mental health issues and claimed to be taking her prescribed medications; however, nurses were afraid to leave the baby with the petitioner and felt that she had not appropriately bonded with the child. When L.H.-L. had to be transferred to another hospital, the petitioner did not want to visit her. The petitioner also admitted to recent struggles that she and the father had experienced with the child's then-eleven-month-old sibling, which she attributed to the father's untreated mental health issues.[3] Witnesses told a Child Protective Services ("CPS") worker that the petitioner admitted to physical altercations with the father, stating that they "argued so badly that [he] pushed her around." Ultimately, the father called CPS to report that he and the petitioner "were unable to care for the child due to their mental health." The father stated that he and the petitioner "were arguing" and that "he could not take the baby crying."

At a hearing in January 2024, the DHS informed the circuit court that the father had recently been arrested following an additional incident of domestic violence against the petitioner and indicated its intent to amend the petition to include these allegations, although it ultimately failed to do so. The court held an adjudicatory hearing in May 2024, at which time the petitioner stipulated to domestic violence in the home and failing to provide adequate housing for the child.

---

[1] The petitioner appears by counsel John M. Jurco. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Counsel Michael A. Kuhn appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The sibling was placed in a legal guardianship with the maternal grandmother and is not at issue in this appeal.

On this basis, the circuit court adjudicated the petitioner as an abusing and neglecting parent, and L.H.-L. as an abused and neglected child.

In August 2024, the petitioner moved for a post-adjudicatory improvement period and the guardian submitted his report to the court. The guardian stated that the petitioner was participating in services, but that providers expressed concern about her ability to care for the child without assistance as she often needed help with "mundane tasks" during supervised visits.[4] The guardian also cited the results of the petitioner's parental fitness evaluation, conducted in April 2024, which found that the petitioner "did not have the parental capacity to care, protect, and change in order to provide adequately for the child[] at the time unless she makes some changes." At a subsequent hearing later that month, the court ordered the multidisciplinary team ("MDT") to meet to develop terms for a potential improvement period. At a review hearing in October 2024, the DHS reported that the petitioner was making progress in some areas but struggling in others. The DHS also proffered that the petitioner had recently requested drug screening, advising the parties that she might test positive for marijuana.

In October 2024, the circuit court took up the petitioner's motion for a post-adjudicatory improvement period along with disposition. The petitioner testified that she was participating in supervised visitation and parenting classes, had recently separated from the father, and would comply with any terms and conditions developed by the MDT. However, the petitioner admitted to failing to call in for "a couple" drug screens and to testing positive for marijuana on one occasion, stating that she used marijuana to "help [her] calm . . . down" before she and the father separated. The petitioner then admitted to making a social media post seeking marijuana three days before the hearing—"not to smoke" but for a friend. She further admitted that she knew this was illegal and she did not obtain the marijuana she was offered only because she did not have a car to retrieve it. A CPS worker then testified that the DHS did not support granting the petitioner an improvement period, although it had provided her with several services, given the petitioner's inability to bond with or comfort the child during visits. In its closing argument, the DHS recommended termination, believing it to be in the child's best interest given her young age and need for permanency. The guardian agreed, citing the petitioner's inability to demonstrate that she could effectively parent despite her receipt of services.

Based on this evidence, the circuit court denied the petitioner's motion for an improvement period, finding that she had failed to demonstrate by clear and convincing evidence that she was likely to fully participate and because it was not in the child's best interest. The court also found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, as the petitioner "had ample opportunity to participate in multiple services" but her progress "[was] not nearly at the level that would be expected after . . . eleven months." In its subsequent written order, the court noted that although the petitioner had "stated that the [c]ourt could trust that she wanted to improve herself for her

---

[4] The guardian attended a supervised visit and observed this firsthand, noting that the petitioner asked for assistance several times and was able to complete parenting tasks after the provider offered direction and suggestions. The guardian found this concerning, as it had been nine months since the proceedings began and he "[was] still not sure that the [petitioner] . . . [was] learning to parent."

child . . . she admitted [that] she did not make that choice last week" when she attempted to obtain marijuana despite knowing her conduct was illegal. The court therefore found that the petitioner was presently unwilling or unable to provide for the child's needs. The court also concluded that the child needed continuity in care and caretakers and a significant amount of time was required to be integrated into a stable and permanent home environment. Accordingly, the court terminated the petitioner's parental rights.[5] The petitioner now appeals this dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first asserts that the circuit court erred in denying her a post-adjudicatory improvement period. West Virginia Code § 49-4-610(2)(B) permits a circuit court to grant an improvement period when a parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate." Further, a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Ample evidence supports the circuit court's finding that the petitioner was unlikely to fully participate in an improvement period. For example, the petitioner did not fully comply with the drug screening she requested—as she admitted to failing to call in for screens. The petitioner also admitted to attempting to obtain marijuana mere days before the hearing, despite knowing it was illegal to do so. Accordingly, we find that the court did not abuse its discretion in denying the petitioner an improvement period.

Next, the petitioner argues that the circuit court erred in terminating her parental rights instead of utilizing a lesser dispositional alternative. However, "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." In addition to the evidence noted above, the record indicates that the petitioner's parenting skills did not sufficiently improve despite her receipt of services for almost a year. This supports the circuit court's finding that there was no reasonable likelihood the petitioner could substantially correct the conditions of abuse and neglect in the near future. Further, the record shows that termination was necessary for L.H.-L.'s welfare, especially given the child's young age (approximately one year old). *See* Syl. Pt. 1, *In re R.J.M.*, 164 W. Va. at 496, 226 S.E.2d at 114 (explaining that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years" due to their unique vulnerability and developmental needs). Circuit courts are permitted to terminate a parent's rights upon these findings. W. Va. Code § 49-4-604(c)(6) (permitting termination upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the

---

[5] The court terminated the father's parental rights, and the permanency plan for the child is adoption in the current placement.

welfare of the child"). Accordingly, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 31, 2024, order is affirmed.

Affirmed.

**ISSUED**:  January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III