**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.M.**

**No. 25-6** (Kanawha County CC-20-2024-JA-91)

## MEMORANDUM DECISION

Petitioner Mother T.M.[1] appeals the Circuit Court of Kanawha County's December 11, 2024, order terminating her parental rights to J.M., arguing that the court erred in denying her motion for a post-adjudicatory improvement period and terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in February 2024 alleging that law enforcement responded to the parents' home, which they found in deplorable condition with drugs (a baggie containing suspected heroin or fentanyl) and drug paraphernalia (powdered substances on plates, straws, and smoking devices) scattered throughout. According to the DHS, there was animal waste and trash throughout the home. The petitioner waived her right to a preliminary hearing, at which time the court ordered the DHS to provide services to the petitioner, including parenting and adult life skills education, random drug screens, and bus passes. The court further ordered that the petitioner could visit the child after passing three consecutive drug screens. Thereafter, the petitioner filed a motion for a post-adjudicatory improvement period.

In July 2024, the court held an adjudicatory hearing. A Child Protective Services ("CPS") worker testified to the condition of the home at the time of removal, including the extreme nature of the animal waste throughout, and indicated that the home had been condemned several months prior to removal. According to the CPS worker, the substances believed to be drugs that were spread across various surfaces were readily accessible to the child and presented a danger.[3] The

---

[1] The petitioner appears by counsel Donnie L. Adkins II. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Matthew Smith appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The CPS worker indicated that the DHS was still awaiting confirmation of drug test results from law enforcement, but that the detective that investigated the matter was "almost one hundred percent positive" that the drugs found in the home were "fentanyl and/or heroin."

CPS worker described a metal box fan with exposed blades that was a "great danger" to the child, as he could have easily placed his limbs inside the moving parts. Regarding the petitioner's participation in services, the CPS worker explained that she failed to attend all but one of her drug screens since the preliminary hearing. Another DHS witness corroborated the testimony about the petitioner's participation. Based on the evidence, the court adjudicated the petitioner of abusing and neglecting the child due to the conditions in the home.

In September 2024, the guardian filed a report in which he recommended termination of the petitioner's parental rights in light of her refusal to fully participate in services or acknowledge the conditions of abuse and neglect at issue. The court held a dispositional hearing in September 2024, during which a CPS worker testified that the petitioner was initially noncompliant with all services, having received a letter from her parenting and adult life skills provider for consistently missing those classes. Following adjudication, the petitioner began participating in parenting and adult life skills education, though she participated by phone instead of in person. However, even after providing the petitioner transportation assistance, she continued to miss drug screens. Eventually, the petitioner began submitting to drug screens, but the CPS worker indicated that "about 95 percent of the drug screens that she has participated in have come back with an out of range error" and that, upon speaking with the laboratory confirming the results, the screens "could not be considered valid." In fact, a laboratory employee explained to the CPS worker that the results the petitioner produced were indicative of "someone that was severely ill and almost in sepsis." However, the CPS worker acknowledged that the petitioner produced a small number of negative drug screens. The CPS worker recommended termination of the petitioner's parental rights because of her noncompliance and the fact that she had not visited with child during the pendency of the proceedings. According to the witness, the DHS attempted to enroll the child in therapy to address his "family related trauma," but it was unsuccessful. He further elaborated that the child was "completely terrified to see" the petitioner and displayed behavioral issues, such as "having accidents on himself." The court then continued the hearing.

Prior to the second hearing, the DHS filed a court report in which it indicated that the petitioner was noncompliant with drug screens, as she failed to screen forty-nine times since August 2024 and, of her most recent sixteen screens, almost half were not considered valid. At the final dispositional hearing in December 2024, Megan Mebane, a representative of the laboratory that tested the petitioner's drug screen samples, testified as an expert witness. Ms. Mebane explained possible causes for the petitioner's invalid drug screen results, indicating that it could be "health related," although she clarified that she could not be sure. A CPS worker testified to the petitioner's lack of participation in drug screens, as set forth in the DHS's report, and explained that the petitioner denied having a drug problem. The CPS worker recommended termination of the petitioner's parental rights. During her testimony, the petitioner denied manipulating her drug screen samples but admitted that she failed to participate fully in drug screening, as required. Ultimately, the court concluded that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future because she did not make sufficient efforts or follow through with the case plan. The court also found that termination of her rights was in the child's best interests. Accordingly, the court denied the petitioner's motion

for an improvement period, emphasizing the significance of her noncompliance with drug screens, and terminated her parental rights to the child.[4] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she was participating in services. In order to obtain a post-adjudicatory improvement period, a parent must first demonstrate that they are likely to fully participate in the same. *See* W. Va. Code § 49-4-610(2)(B). While it is true that the petitioner was participating in parenting and adult life skills services, the record demonstrates that she was noncompliant with drug screens, which the circuit court cited as extremely important given the presence of drugs in the home. Indeed, the petitioner missed almost fifty drug screens during the proceedings and admitted that she had no valid excuse for her failure to participate. Given the petitioner's initial failure to participate in all the services ordered, as well as her ongoing refusal to fully participate in drug screens, it is clear that the circuit court did not err in concluding that she was unlikely to fully participate in an improvement period or abuse its discretion in denying her motion. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (noting that circuit courts have discretion to deny an improvement period when no improvement is likely). As such, the petitioner is entitled to no relief.

Finally, the petitioner argues that termination of her parental rights was in error because a less restrictive dispositional alternative was appropriate. What the petitioner fails to recognize, however, is that the circuit court had ample evidence upon which to find there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect, given her extended refusal to participate in drug testing, as required. According to West Virginia Code § 49-4-604(d)(3), situations in which there is no reasonable likelihood conditions of abuse and neglect can be substantially corrected in the near future include when the parent has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." The petitioner was aware of the importance the circuit court placed on the requirement to drug screen, given the danger that drugs in the home posed to the child. Despite this recognition, the petitioner failed to fully participate in drug testing. Additionally, the court found that termination of the petitioner's parental rights was in the child's best interests, given his behavioral issues as a result of the "family . . . trauma" he experienced in the petitioner's care and his extreme fear of seeing the petitioner. Circuit courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6). Further, "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Because the court had ample evidence upon which to base the findings necessary for termination of the petitioner's parental rights, we conclude that termination was not in error.

---

[4] The father's rights were also terminated. The permanency plan for the child is adoption in the current placement.

3

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 11, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III