## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.H.-1, K.C., S.D., M.L., A.D., and M.D.**

**No. 23-284** (Monongalia County 23-JA-30, 23-JA-31, 23-JA-32, 23-JA-33, 23-JA-34, and 23-JA-35)

## MEMORANDUM DECISION

Petitioner Mother A.H.-2[1] appeals the Circuit Court of Monongalia County's April 18, 2023, order terminating her parental rights to the children, A.H.-1, K.C., S.D., M.L., A.D., and M.D.[2] She argues that termination was erroneous because she was denied an improvement period. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In January 2023, the DHS filed an abuse and neglect petition alleging that petitioner was abusing illegal substances which rendered her unable to properly care for the children. The petition detailed petitioner's history with cocaine, heroin, methamphetamine, and fentanyl and outlined a prior abuse and neglect proceeding, initiated in April 2019, which was also regarding petitioner's drug use. The prior proceeding was dismissed in April 2022 upon petitioner's completion of an improvement period. In the instant matter, a referral to Child Protective Services ("CPS") revealed that petitioner had relapsed. The referral indicated that petitioner was agitated, lost weight, talked to herself, physically and verbally abused the children, failed to provide the children with

---

[1]Petitioner appears by counsel John C. Rogers. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katherine A. Campbell. Counsel P. Todd Phillips appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because one of the children and petitioner share the same initials, we will refer to them as A.H.-1 and A.H.-2, respectively.

1

appropriate clothing and food, slept often and was difficult to wake, and failed to pick up the children from the bus stop on multiple occasions.

The court held a preliminary hearing in February 2023. Petitioner was not present but was represented by counsel. The DHS presented testimony of a CPS worker who discussed petitioner's substance abuse and repeated instances in which she failed to retrieve the children from the bus stop. The CPS worker stated that on one occasion, the children were at the bus garage and no one could get in contact with petitioner. At around 5:30 p.m. that day, law enforcement and CPS went to petitioner's house and knocked on the door for twenty minutes before petitioner answered the door, appearing "out of it." Petitioner said she had been sleeping. Petitioner tested positive for cocaine the following day. However, she insisted that the result was a mistake. Based on the foregoing, the court ratified removal of the children.

Later that same month, an adjudicatory hearing was held, at which time petitioner was present via telephone despite the court's requirement that she appear in person. The court proceeded to hear testimony of the same CPS worker who testified at the preliminary hearing. The CPS worker's testimony was consistent with his prior testimony, and he maintained that petitioner's substance abuse had negatively affected her ability to parent. The CPS worker also testified regarding the previous abuse and neglect proceeding and indicated that, although petitioner completed an improvement period, she never admitted to having a substance abuse problem. Petitioner testified, denying allegations related to her failure to pick up the children from the bus stop and further denying any substance abuse issues. She indicated that she would be willing to participate in a drug treatment program; however, when asked why she would attend such a program if she believed she did not have a substance abuse problem, she responded that her attorney told her she should in order for her children to be returned. At the close of the evidence, the court adjudicated petitioner as an abusing and neglecting parent due to her substance abuse and its effect on her ability to properly care for the children. The court thereafter ordered petitioner to submit to a drug screen by noon the following day.

The court proceeded to disposition in March 2023, at which time the DHS and guardian supported termination of petitioner's parental rights. Petitioner was not present for the dispositional hearing; however, she was represented by counsel. Petitioner's counsel advised that he was unable to contact petitioner until late the night prior and that she indicated she would be present for the hearing. However, prior to the hearing, petitioner sent counsel a message that she was stuck in traffic and requested to appear by phone. The court noted that the hearing was already starting thirty minutes late and denied petitioner's request as it appeared to be disingenuous. The court then inquired of the DHS as to petitioner's participation in ordered drug screening. Counsel for the DHS stated that petitioner did not drug screen as ordered and had not appeared for any scheduled drug screens since the initial January 11, 2023, screen, at which time she tested positive for cocaine. Counsel for petitioner requested that the court grant petitioner a post-adjudicatory improvement period,[3] arguing that petitioner had one parenting session and was making efforts to check herself into a rehabilitation facility. Prior to ruling, the court heard testimony of the

---

[3]The order on appeal indicates that petitioner filed a written motion for an improvement period. However, no such motion appears in the appendix record on appeal.

children's kinship placement, who believed petitioner's behavior and drug use had worsened. The witness indicated that petitioner had only spoken to the children twice in the span of approximately forty-five days and would not answer the phone when called. When phone calls did occur, they were "triggering" for the children and petitioner appeared to be under the influence. The kinship placement testified that, "the more chances you give her, the less chances these kids have for a normal, happy, healthy life." In consideration of the foregoing, the court found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that it was necessary for the welfare of the children to terminate petitioner's parental rights. The court noted petitioner's lack of effort, interest, and ability to parent the children in finding termination to be in the children's best interests.[4] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, although petitioner concedes that she did not drug screen or acknowledge a substance abuse problem, she argues that the circuit court erred in denying her motion for an improvement period. We disagree.

We have previously established that a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Petitioner not only failed to participate in services such as drug screening, but she also failed to appear for hearings and visits with the children. We have explained that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). The circuit court had ample evidence to deny petitioner an improvement period, particularly in light of petitioner's lack of interest in visiting her children or even answering their phone calls. Moreover, as petitioner admits on appeal, she continues to deny any substance abuse issues despite testing positive for cocaine and appearing under the influence to CPS workers and the children's kinship placement. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem . . . results in making the problem untreatable" (citation omitted)).

We have further held that,

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical

---

[4]The permanency plan for K.C., S.D., A.D., and M.D. is reunification with their respective fathers in the event the fathers successfully complete improvement periods, or adoption by kinship placement. The permanency plan for A.H.-1 is to remain in the custody of her nonabusing father. The permanency plan for M.L. is a guardianship with his paternal aunt due to the death of his nonabusing father.

development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Petitioner was granted an improvement period in the prior abuse and neglect proceeding; however, only a few months after the children were returned to her care, she began exhibiting signs of drug relapse and failed to properly parent the children as a result. This behavior continued throughout this proceeding with no demonstrative effort by petitioner to correct her issues. The welfare of the children would be clearly threatened if they were returned to her care. We, therefore, find no error by the circuit court in its decision to terminate petitioner's parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood conditions of abuse and neglect can be substantially corrected in the near future and when necessary for child's welfare); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect and abuse can be substantially corrected") (citation omitted).

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 18, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn