**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **R.H.-M. and A.H.-M.**

**No. 25-78** (Kanawha County CC-20-2023-JA-219 and CC-20-2023-JA-220)

**MEMORANDUM DECISION**

Petitioner Mother T.M.[1] appeals the Circuit Court of Kanawha County's January 9, 2025, order terminating her parental rights to R.H.-M. and A.H.-M., arguing that the court erred in adjudicating her and denying her motion for a post-adjudicatory improvement period.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2023, the DHS filed a petition alleging, among other things, that the father physically abused both children and abused alcohol. The support for these allegations came primarily from Child Advocacy Center ("CAC") interviews, in which the children described the father's abuse. At the time the DHS filed the initial petition, there were no allegations against the petitioner. At the preliminary hearing, the circuit court ordered A.H.-M. to undergo a psychological evaluation. However, the circuit court continued the subsequent adjudicatory hearing multiple times because the child's psychological evaluation was not completed. At a hearing in February 2024, the court explicitly found that the petitioner failed to take the child to the psychological evaluation and ordered that if she failed to take her to the rescheduled appointment later that month, then it would remove the children from her care.

In March 2024, the DHS filed an amended petition following A.H.-M.'s psychological evaluation, in which the then-nine-year-old child was clear that the petitioner instructed her to fabricate the original allegations against the father. According to the DHS, the child told the psychologist that "[w]e went to Court to tell them Daddy hit me," and, when asked why, the child replied, "I don't know. Mommy said that." The child further disclosed that the petitioner told her that the father "kicked her in the stomach while she was pregnant with" A.H.-M. and that the petitioner "said not to go around [the father]." When asked what the petitioner told her to say during the evaluation, A.H.-M. confirmed that the petitioner instructed her to "tell [the

---

[1] The petitioner appears by counsel Jason S. Lord. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Counsel Jennifer R. Victor appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

psychologist] what we've been telling you." Finally, A.H.-M. disclosed that the maternal grandmother had also coached her to make allegations against the father. The psychologist noted A.H.-M. suffered from "extreme levels of anger, anxiety, and disruptive behaviors, as well as significant depression and low self-esteem," which the psychologist attributed as most "likely the product of the difficult situation the child is in as she is pressured to make false allegations against her father in order to please he[r] mother and maternal grandmother." The psychologist concluded that "[i]t is evident from the child's reports, her extreme level of anxiety and the signs of significant enmeshment with her mother that [A.H.-M.] is being coached or influenced to make false allegations against her father and to have negative feelings toward him" and that the petitioner's acts "could reasonably be expected to bring about psychological harm." Accordingly, the DHS alleged that the petitioner psychologically abused the children.

On March 20, 2024, the circuit court held a preliminary hearing on the amended petition. A Child Protective Services ("CPS") worker testified to the circumstances giving rise to the filing of the amended petition, including her concern that the petitioner tried to influence A.H.-M. during her psychological evaluation. The CPS worker described the petitioner's conduct as "extreme psychological abuse" to both children. Barbara Nelson, the psychologist that evaluated A.H.-M., testified as an expert and explained her conclusions as set forth in the psychological report, which was admitted into evidence, and recounted in the amended petition. Ms. Nelson explained that A.H.-M. demonstrated "extensive indications of coaching and influence." In discussing the child's diagnosis and recommended treatment, Ms. Nelson indicated that A.H.-M. had "a lot of history of . . . psychological abuse" as a result of being "placed in a position where she has to make allegations against her father." Ms. Nelson also confirmed that the child was clear that both the petitioner and the maternal grandmother had coached her to make allegations against the father. Finally, Ms. Nelson was clear that she "found nothing . . . to substantiate any kind of abuse on the part of the father." The court also heard testimony from the individual who conducted the children's CAC interviews about her concerns that A.H.-M. was coached. According to this witness, R.H.-M. was only three years old at the time of the interview and "[h]er speech was very difficult to understand." Further, R.H.-M. stated that the father hit her, but this disclosure was described as the child "kind of blurt[ing] it out" and being unable "to give a lot of context."

In August 2024, the circuit court held an adjudicatory hearing, during which Dr. Timothy Saar, the psychologist who oversaw the petitioner's psychological evaluation, testified as an expert. According to Dr. Saar, the petitioner's evaluation revealed "evidence that . . . [the petitioner] had some role in the influence of the children," which constituted emotional abuse. The petitioner's prognosis for improvement was "guarded," given concerns over her ability to comply with court direction and refrain from negatively influencing the children. Further, improvement would be difficult given that the petitioner denied the allegations against her and blamed the maternal grandmother. According to Dr. Saar, "[t]here's no acknowledging with [the petitioner]." At the close of evidence, the petitioner attempted to stipulate to her adjudication, but the court declined and proceeded to rule on adjudication.

Ultimately, the court found that the petitioner "coached and influenced her children to fear, dislike, and distrust their father" and that she "committed emotional and psychological abuse . . . against her children." According to the court, the petitioner's "behaviors were so relentless and pervasive that they occurred even during [A.H.-M.'s] psychological evaluation." The court

2

stressed that the petitioner's conduct caused A.H.-M. "to experience extreme levels of anger, anxiety, depression, and low self-esteem, and to exhibit disruptive behaviors." The court also noted that the petitioner "denied any wrongdoing, denied any parenting deficiencies, and sought to blame her own mother for any coaching." The court concluded that this conduct constituted abuse of the children.[3]

Following the adjudicatory hearing, the petitioner filed a motion for a post-adjudicatory improvement period. At the final dispositional hearing in November 2024, a CPS worker testified in support of termination of the petitioner's parental rights, given her refusal to acknowledge any wrongdoing. During the petitioner's testimony she refused to accept responsibility for her conduct and blamed the maternal grandmother for coaching the children. Based on the evidence, the circuit court found that the petitioner "had numerous opportunities to accept responsibility for her acts and omissions" but "failed and refused to acknowledge committing any child abuse . . . [or] any parenting deficiencies or wrongdoing." The court stressed that the petitioner continued to blame the children's maternal grandmother for the conduct that the court referred to as "intentionally harmful and malicious" and "intensely damaging to the children." The court found that there were no services that could remedy the petitioner's parenting issues and that she demonstrated an inadequate capacity to solve the problems of abuse on her own or with help. As such, the court concluded that there was no reasonable likelihood that the petitioner could correct the conditions of abuse in the near future and failed to demonstrate that she was likely to fully participate in an improvement period. The court therefore denied the mother's motion for an improvement period and, finding that it was necessary for the children's welfare, terminated the petitioner's parental rights to the children.[4] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court erred in adjudicating her. To sustain an adjudication for abuse, West Virginia Code § 49-4-601(i) requires clear and convincing evidence, meaning "that more than a mere scintilla of evidence has been presented to establish the veracity of the allegations of abuse . . . , but it does not impose as exacting an evidentiary burden as criminal proceedings which generally require proof beyond a reasonable doubt." *In re A.M.*, 243 W. Va. 593, 598, 849 S.E.2d 371, 376 (2020). Further, a circuit court's findings of abuse "shall not be set aside by a reviewing court unless clearly erroneous." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). In challenging her adjudication, the petitioner does not argue that the children were not abused children. *See* W. Va. Code § 49-1-201 (defining "[a]bused child," in relevant part, as one "whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts . . . emotional injury upon the child or another child in the home"). In fact, the petitioner admits that the child "was probably coached." Instead, she asserts that it was the

---

[3] The court also found that the petitioner neglected the children. However, this finding is irrelevant to the resolution of this appeal.

[4] The permanency plan for the children is to remain with the father.

3

child's maternal grandmother who engaged in the abusive conduct.[5] However, this argument ignores evidence directly indicating that the petitioner coached A.H.-M., including the child's explicit disclosures that the petitioner was responsible for the allegations against the father and Ms. Nelson's testimony to this effect. In fact, the court heard evidence that the petitioner's coaching of A.H.-M. continued *during* the child's psychological evaluation. The court also heard extensive evidence of the extreme impact the petitioner's conduct had on A.H.-M., including the child's anxiety, fear, and behavioral issues. Simply put, the evidence overwhelmingly demonstrated that the petitioner engaged in abusive conduct. As such, it is clear that the circuit court had ample evidence upon which to adjudicate the petitioner in regard to both children.[6]

Finally, the petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she was willing to participate in services. In order to obtain a post-adjudicatory improvement period, a parent must first demonstrate that they are likely to fully participate in the same. *See* W. Va. Code § 49-4-610(2)(B). While it is true that the petitioner testified that she was willing to participate in services, had undergone therapy to "help address her problems," and submitted to all services the DHS requested, the record demonstrates that she refused to acknowledge her abuse of the children. As we have explained, "[i]n order to remedy the abuse . . . , the problem must first be acknowledged," otherwise "the problem [is] untreatable and . . . an improvement period [is] an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Before this Court, the petitioner recognizes that she refused to acknowledge her own conduct, but asserts that her acknowledgment of the grandmother's conduct constituted "an appropriate admission." We disagree, as the petitioner was required to acknowledge her own abusive conduct, which was proven by clear and convincing evidence, in order to address the problem. As such, the circuit court did not abuse its discretion in denying her motion. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (noting that circuit courts have discretion to deny an improvement period when no improvement is likely). Therefore, the petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 9, 2025, order is hereby affirmed.

Affirmed.

---

[5] In support of this argument, the petitioner acknowledges that she did not testify at adjudication. However, she cites to her testimony from the dispositional hearing to support her assertion that the grandmother coached the child. Given that the circuit court did not have this testimony before it at adjudication, the petitioner cannot be entitled to relief in regard to arguments based on this evidence.

[6] Although she does not raise this issue, it is worth noting that the petitioner's abuse of A.H.-M. was a sufficient basis for the court to find that R.H.-M. was also abused. *See In re H.B.*, -- W. Va. --, -- S.E.2d --, 2025 WL 3158237 at *6 (Nov. 12, 2025) (explaining that "the statutory definition of an abused child allows the abuse of one child to be automatically imputed to other children in the home," including instances of emotional abuse).

4

**ISSUED**: January 29, 2026


**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III