## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **G.L.-1 and A.L.**

**No. 25-608** (Hardy County CC-16-2024-JA-57 and CC-16-2024-JA-58)

## MEMORANDUM DECISION

Petitioner Father G.L.-2[1] appeals the Circuit Court of Hardy County's August 7, 2025, order terminating his parental rights to G.L.-1 and A.L., arguing that the circuit court erred in denying him an improvement period and that termination was not the least restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In September 2024, the DHS filed an abuse and neglect petition alleging, in pertinent part, that both parents had overdosed on drugs and that the children had been exposed to drugs, as then-five-year-old G.L.-1 tested positive for heroin and fentanyl, and then-two-year-old A.L. had to be administered multiple doses of Narcan due to fentanyl exposure. In March 2025, the DHS amended the petition, alleging, in pertinent part, that the parents chronically abused and/or neglected the children by their significant history of Child Protective Servies ("CPS") intervention due to their substance abuse. Specifically, the DHS alleged that in 2020, G.L.-1 was the subject of an abuse and neglect case in which the parents both successfully completed post-adjudicatory improvement periods to address their substance abuse, and thereafter regained custody of the child. During their improvement periods, the parents were provided extensive services to address their substance abuse, including, among other things, drug screening, individualized parenting and adult life skills classes, substance abuse treatment, and domestic violence services. In 2021, the DHS filed another abuse and neglect petition, again due to the parents' substance abuse. During the 2021 proceedings, the petitioner represented to the court that he separated from the mother and intended to file for divorce. The petitioner was provided with extensive services, and the mother voluntarily relinquished her custodial rights to G.L.-1. Eventually, the circuit court reunified the petitioner with the child and informed the petitioner that the mother was prohibited from having contact with G.L.-1 unless supervised by a third party. Despite this order and their representations

---

[1] The petitioner appears by counsel J. Brent Easton. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Lauren M. Wilson appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because one of the children and the petitioner share initials, we use numbers to differentiate them.

1

that they had broken up, the parents remained in a relationship and resided together in the same household with G.L.-1, later had another child, A.L., together, and the petitioner allowed the mother unsupervised access to G.L.-1.

In May 2025, at the adjudicatory hearing in the present matter, the petitioner stipulated to the allegations in the petition and conceded that his ongoing substance abuse disorder constituted chronic abuse and/or neglect. The circuit court accepted the petitioner's stipulation, adjudicating him as an abusing and/or neglecting parent of the children and further found that aggravated circumstances existed due to the chronic abuse. Thereafter, the petitioner filed a motion for a post-adjudicatory improvement period.

At the dispositional hearing in July 2025, the guardian submitted medical records confirming that both G.L.-1 and A.L. tested positive for the above-described substances and that A.L. had endured a suspected overdose. The DHS presented testimony from multiple witnesses concerning the petitioner's history of substance abuse and his exposure of G.L.-1 to the mother following the termination of the mother's custodial rights, despite knowledge that this contact was prohibited. The petitioner also testified, stating that he maintained his sobriety by participating in a medication-assisted treatment ("MAT") program; had stable employment; obtained a valid driver's license and transportation; and had his own residence. On cross-examination, the petitioner admitted that he had previously participated in a MAT program along with other various substance abuse treatments but was unsuccessful. Additionally, the petitioner blamed both the mother and the grandmother for failing to remove all drugs from the home, including those that he overdosed on, before the children were exposed. The petitioner also stated that he had been afforded multiple prior improvement periods where he received a vast array of services. Furthermore, the petitioner confirmed that he knew the mother was not allowed unsupervised contact with G.L.-1 but continued to secretly maintain a relationship with her after the 2021 case closed, resulting in the birth of A.L. The children's foster care placement testified that the petitioner had claimed he had a girlfriend named Amanda who helped him care for the children, despite the fact that he was in a relationship with the mother at that time. The circuit court later found that the evidence showed that the petitioner "made up a fictitious girlfriend to try to get around the fact that [the parents were] violating the law" by living together in the same household as G.L.-1.

Ultimately, the circuit court found that the parents had a "history of compliance while under the supervision of [CPS] and the Court; however, their past performance shows that they have been unable to maintain housing, employment, and their sobriety for any significant period of time." The court further found that the parents "have had every service available afforded to them, to no avail" as the parents continued to abuse substances, leading to the instant proceedings. The court stated that the parents' "past performance has been poor," and that it was "unaware of any other case where two parents have been given as many opportunities . . . to try to improve their situation" but remained unsuccessful. Additionally, the court found that the petitioner had "been deceptive to both the [DHS] and the Court" by misrepresenting his relationship status with the mother. Accordingly, the court denied the petitioner's motion for an improvement period and further found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future. Lastly, because of the need to provide the children with safe, stable permanency, the court also found that termination of the petitioner's

parental rights was necessary for the children's welfare and proceeded to terminate such rights to both G.L.-1 and A.L.[3] It is from the circuit court's dispositional order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner first asserts that the circuit court erred by denying his motion for a post-adjudicatory improvement period. We disagree. Under West Virginia Code § 49-4-610(2)(B) a parent "*may*" be granted an improvement period if the parent "demonstrates, by clear and convincing evidence, that [he or she] is likely to fully participate in the improvement period." Here, the petitioner was afforded and successfully completed a multitude of services to address his substance abuse in the prior abuse and neglect cases. Yet, despite these opportunities, the petitioner continued to abuse substances, which led to his subsequent overdose and the children's exposure to drugs to such an extent that then-two-year-old A.L. needed multiple doses of Narcan to be stabilized. In addition to these facts, the petitioner's testimony showed that he blamed others for the children's exposure to the drugs that he overdosed on. Accordingly, the circuit court did not err in denying the petitioner's motion for an improvement period and proceeding to termination. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

The petitioner also argues that the circuit court erred in terminating his parental rights as this was not the least restrictive alternative. We again disagree. We have consistently held that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help." Here, as highlighted above, the evidence showed that the petitioner received two prior improvement periods, which provided him with extensive services to correct his substance abuse disorder to no avail. In fact, his condition deteriorated to the point that he overdosed and subsequently exposed the children to drugs, which harmed the children and threatened A.L.'s life in particular. As we have explained, "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened" before terminating parental rights. *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (quoting *In re R.J.M.*, 164 W. Va. at 496, 266 S.E.2d at 114, Syl. Pt. 1, in part). Additionally, the circuit court found that the petitioner had been deceitful with both the DHS and the court to avoid scrutiny of his relationship with the mother, as he had allowed the mother unsupervised contact with G.L.-1 in violation of the court's order. We decline to disturb such credibility findings on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388,

---

[3] The mother's parental rights were also terminated. The permanency plan for the children is adoption in their current placement.

497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As such, the circuit court had sufficient evidence to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and/or neglect in the near future. The court also considered the need to provide permanency for the children, supporting its conclusion that termination was necessary for the children's welfare. Thus, we conclude that the circuit court did not err in terminating the petitioner's parental rights to G.L.-1 and A.L. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit courts to terminate parental rights upon finding that there is no reasonable likelihood that the conditions can be substantially corrected in the near future and when necessary for child's welfare).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 7, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: May 6, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III